FILED

2021 Aug-19  PM 02:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **SYBIL Y. WASHINGTON, o/b/o N.J.W.,** | ) ) ) | |
| **Claimant,** | ) ) | |
| **vs.** | ) ) | **Civil Action No. 2:20-CV-00908-CLS** |
| **KIBLO KIJAKAZI, Social Security Administration, Acting Commissioner,** | ) ) ) ) ) | |
| **Defendant.** | | |

### MEMORANDUM OPINION AND ORDER

Claimant, Sybil Y. Washington, commenced this action on behalf of her minor child, N.J.W., pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying the claim for childhood disability benefits.[1]

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253

---

[1] Doc. no. 1 (Complaint).

(11th Cir. 1983).

Claimant was two years old at the time of the administrative decision, and he alleged childhood disability due to low birth weight and asthma.[2]  The ALJ found that claimant's conditions of asthma and allergic rhinitis were severe impairments.[3]  Even so, the ALJ found that the claimant did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled one of the listed impairments.[4]  Claimant appealed the ALJ's decision to the Appeals Council, which denied review on March 4, 2020.   Thereafter, on June 26, 2020, claimant filed this civil action to challenge the ALJ's decision.

Claimant presents two arguments:  first, that claimant timely filed a civil action requesting for review of the agency's decision by this court, even though it was filed beyond the statutorily prescribed sixty-day period;[5] and, second, that the administrative law judge erred in assessing three of the six domains of functioning

---

[2] Tr. 23.

[3] Tr. 18.

[4] Tr. 23-25.

[5] 42 U.S.C. § 405(g) provides, in pertinent part, that

[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within  sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

for childhood disability claims.

## A.      Timeliness

As noted above, the Appeals Council denied claimant's request for review of the ALJ's decision on March 4, 2020, and issued a notice to claimant of that decision.[6] The notice provided claimant the following guidance with regard to further action that could be taken:

- You have 60 days to file a civil action (ask for court review).

- The 60 days start the day after you receive this letter. We assume you received this letter 5 days after the date on it unless you show us that you did not receive it within the 5-day period.

- If you cannot file for court review within 60 days, you may ask the Appeals Council to extend your time to file. You must have a good reason for waiting more than 60 days to ask for court review. You must make the request in writing and give your reason(s) in the request.

  You must mail your request for more time to the Appeals Council at the address shown on the top of this notice.[7]

Claimant filed this civil action on June 26, 2020, well beyond the sixty-day limitation period. Claimant acknowledges that the civil action was untimely, but argues that, because claimant's mother made a documented effort to request an

---

[6] Tr. 2-4.

[7] Tr. 4.

3

extension of the time to file a civil action by telephone, and because the local offices of the Social Security Administration were shut down for in-person service as of March 17, 2020, due to precautions taken for COVID-19, the doctrine of equitable tolling should be invoked. The Commissioner contends: that the complaint should be dismissed as untimely; and that, even if the civil action was considered timely filed, the ALJ's decision should be upheld.

The doctrine of equitable tolling allows a court to pause the running of the statute of limitations where extraordinary circumstances have been shown. *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 114 (2013). "Federal courts have typically extended equitable relief only sparingly." *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990).

The Supreme Court held in *Bowen v. City of New York,* 476 U.S. 467 (1986), that "application of a traditional equitable tolling principle to the 60-day requirement of [42 U.S.C.] § 405(g) [*i.e.*, the provision of the Social Security Act governing judicial review of Supplemental Security Income denials,] is fully consistent with the congressional purpose and is nowhere eschewed by Congress." *Id.* at 480 (quotation marks omitted & bracketed text supplied). Subsequently, in *Jackson v. Astrue*, 506 F.3d 1349 (11th Cir. 2007), the Eleventh Circuit examined the showing that must be made by a Social Security claimant in order to equitably toll the limitations period.

The Court concluded that "traditional equitable tolling principles require a claimant to justify her untimely filing by a showing of extraordinary circumstances," rather than good cause for the delay: the standard for requests for extension of time made to the Appeals Council. *Id.* at 1353. "Extraordinary circumstances" include "situations where the defendant misleads the plaintiff, allowing the statutory period to lapse; or when the plaintiff has no reasonable way of discovering the wrong perpetrated against her . . . ." *Id.* (quoting *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1153 (11th Cir. 2005)). Equitable tolling is appropriate when "extraordinary circumstances are both beyond the plaintiff's control and unavoidable even with diligence." *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999).

Several courts have considered whether the COVID-19 pandemic is an extraordinary circumstance that provides justification for untimely filings, and each have held that an individual must show that he was diligently pursuing his rights, and how, specifically, the pandemic prevented him from timely filing. *See., e.g., Klick v. Cenikor Foundation*, 509 F. Supp.3d 951, 960 (S.D. Tex. 2020) (plaintiff's diligence combined with the pandemic and other issues justified equitable tolling); *Willard v. Industrial Air*, No. 1:20-cv-823, 2021 WL 309116, at *4-5 (M.D. N.C. Jan. 29, 2021) (plaintiff failed to show his diligence in pursuing his rights, and could not rely on the "chaos created by the pandemic alone to justify equitable tolling"); *Cummins v.*

5

*Ascellon Corp.*, No. DKC 19-2953, 2020 WL 6544822, at *10 (D. Md. Nov. 6, 2020) (where filing took place on March 3, 2020, "a time when the COVID crisis was both new and reaching a fever pitch," equitable tolling was allowed); *Hood v. Catholic Health Systems, Inc.,* No. 1:20-cv-673, 2020 WL 8371205, at *6 ( W.D. N.Y. Sept. 28, 2020) (parties did not dispute that the COVID-19 pandemic was "extraordinary and unpredictable," but plaintiff failed to show that the pandemic actually affected her ability to timely file); *Cowan v. Davis*, No. 1:19-cv-00745-DAD, 2020 WL 4698968, * 5 (E.D. Cal. Aug. 13, 2020) ("COVID-19 pandemic undoubtedly presents an extraordinary circumstance impacting petitioner's right to the assistance of appointed habeas counsel in preparing his federal petition."); *Dunn v. Baca,* No. 3:19-cv-702-MMD-WGC, 2020 WL 2525772 (D. Nev. May 18, 2020) (equitable tolling allowed where petitioner, represented by the Federal Public Defender, was diligently pursuing claim in the face of "the extraordinary circumstance of the COVID-19 pandemic").

Here, claimant contends that his mother obtained an extension to file a civil action telephonically. The administrative transcript contains a "Report of Contact" showing that claimant's mother contacted an individual in the "Congressional and Public Affairs Branch" on May 1, 2020. The report reads as follows:

Ms. Sybil Yvette Washington, mother of Nicholas Washington, called

the Congressional and Public Affairs Branch on May 1, 2020, to report that she would like to request an 'Extension of Time' to file a Civil Action.

She will need time to retain an attorney for her child's case.

Tr. 3.  Claimant also submitted an unsworn declaration, stating that:

> Prior to my filing the Pro Se complaint in this matter on behalf of my son, I contacted the Social Security Administration in Birmingham, Alabama on May 1, 2020 by telephone and was informed that I would have an extension of time to file a civil action on behalf of my son.

Doc. no. 18 (Exhibit B to Claimant's Brief).  The report of contact is ambiguous, but establishes that claimant's mother made an attempt to protect claimant's rights within the time that the civil action was due to be filed.

Claimant also argues that he was prevented from timely filing a civil action because shortly following the Appeals Council's denial of review on March 4, 2020, the President of the United States declared a national emergency due to the pandemic.[8]  In turn, the Social Security Administration issued a statement closing all local Social Security offices to the public for in-person service, effective March 17, 2020.  Instead, the Social Security Administration directed clients to:  use the online services; or, if unable to do so, to contact the local office by telephone for assistance.

---

[8] *See* Proclamation 9994 of March 13, 2020, 85 Fed. Reg. 15337-15338 (March 18, 2020).

The Social Security Administration also provided a national 1-800 number.[9]

Upon consideration of the record, the court finds that claimant has satisfied the criteria for equitable tolling. While it is true that claimant did not follow the Appeals Council's instructions to make a written request for additional time, Claimant's mother diligently pursued claimant's right to judicial review, by contacting the Social Security Administration prior to the expiration of the sixty-day period for filing a civil action. Claimant's time to file fell during the early and arguably most chaotic stage of the COVID-19 outbreak, when all things were uncertain. That fact, a circumstance beyond claimant's control, along with claimant's mother's diligence in attempting to preserve claimant's rights, combine to establish that equitable tolling is justified.

## B.    Functional Equivalence

The ALJ found that claimant suffered from asthma and allergic rhinitis, both of which are severe impairments, but that he did not establish that his conditions met or medically equaled one of the listed impairments in 20 C.F.R. §§ 416.924, 416.925 and 416.926, or that his impairments functionally equaled the severity of the listings.[10] Claimant challenges the ALJ's evaluation of whether his impairment was

---

[9] Doc. no. 18 (Exhibit A to Plaintiff's Brief)

[10] Tr. 19, 24.

functionally equivalent to a listed impairment.

If a child's impairments do not meet or medically equal a listed impairment, the ALJ must then determine if the child's impairments are functionally equivalent in severity to a listed impairment. 20 C.F.R. §§ 416.924(d), 416.926a(a).  The ALJ considers the child's functioning in terms of six domains:  (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).  For the child's impairments to functionally equal a listed impairment, the child's impairments must result in "marked" limitations in two domains of functioning, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a).  A "marked" limitation is one which "interferes seriously" with a claimant's abilities in a domain. 20 C.F.R. § 416.926a(e).  It is more than "moderate," but less than "extreme." *Id*.  A claimant's impairment can also functionally equal a listed impairment if it results in an "extreme" limitation in one domain.  20 C.F.R. § 416.926a(d).  An "extreme" limitation is one that "interferes very seriously with [a claimant's] ability to initiate, sustain, or complete activities."  *Id*. (alteration supplied).  Each domain is assessed using "age group descriptors," with five age ranges: newborns and young infants to age one; older infants and toddlers to age three; preschool children between three to

five years of age; school-age children between six to twelve years of age; and adolescents between twelve to eighteen years of age. 20 C.F.R. § 416.926a(g)(2). The ALJ considered claimant's functioning in each of those six domains using the age group descriptors for newborns and young infants (claimant's age at the time of filing) and for older infants and toddlers (claimant's age at the time of the hearing).

Claimant first argues that the ALJ failed to assess properly his function in the domains of  "acquiring and using information" and "caring for yourself." Specifically, claimant asserts that the ALJ did not consider his physical impairments when evaluating those domains.

As for the domain of "acquiring and using information," claimant contends that  the record does not contain evidence that he had acquired or used information to take the medications or use the medical equipment necessary to control his asthma, and thus the ALJ's determination that he was not limited in that domain is not supported by substantial evidence.  This argument is without merit.

The descriptor for this domain for newborns and young infants reads as follows:

> At this age, you should show interest in, and explore, your environment. At first, your actions are random; for example, when you accidentally touch the mobile over your crib.  Eventually your actions should become deliberate and purposeful, as when you shake noisemaking toys like a bell or rattle.  You should begin to recognize, and then anticipate,

10

routine situations and events, as when you grin with expectation and the sight of your stroller. You should also recognize and gradually attach meaning to everyday sounds, as when you hear the telephone or your name. Eventually, you should recognize and respond to familiar words, including family names and what your favorite toys and activities are called.

20 C.F.R. § 416.926a(g)(2)(i). The descriptor for older infants and toddlers states:

At this age, you are learning about the world around you. When you play, you should learn how objects go together in different ways. You should learn that by pretending, your actions represent real things. This helps you understand that words represent things, and that words are simply symbols or names for toys, people, places, and activities. You should refer to yourself and things around you by pointing and eventually by naming. You should form concepts and solve simple problems through purposeful experimentation (e.g., taking toys apart), imitation, constructive play (e.g., building with blocks), and pretend play activities. You should begin to respond to increasingly complex instructions and questions, and to produce an increasing number of words and grammatically correct simple sentences and questions.

20 C.F.R. § 416.926a(g)(2)(ii).

The ALJ evaluated, as she was required to do, claimant's ability to function in those areas, based upon the medical evidence of record. In particular, she found that:

In treatment records, it was noted that there are no concerns about his problem solving skills. He was noted to met verbal language milestones. The claimant was described as looking for hidden objects, imitating new gestures, and handing his mother a book to read. He was described as having good development as noted previously. Dr. Heilpern [non-examining physician] opined that the claimant has no limitation in this domain. There is no indication that the claimant has any limitations in acquiring and using information.

Tr. 27 (record cites omitted).  Claimant's contention that the ALJ should have considered whether he could manage his medication and use his medical equipment is simply unavailing.  Those considerations are not part of the regulatory scheme, and could not be, as no infant, older infant, or toddler would be able to do so.  The ALJ thoroughly reviewed the medical evidence against the appropriate criteria, and found that claimant had no limitation in this domain.  The ALJ's determination is supported by substantial evidence.

Claimant makes a similar argument with respect to the domain of "caring for yourself."  That domain's descriptor for newborns and infants reads as follows:

> Your sense of independence and competence begins in being able to recognize your body's signals (e.g., hunger, pain, discomfort), to alert your caegiver to your needs (e.g., by crying), and to console yourself (e.g., by sucking on your hand) until help comes.  As you mature, your capacity for self-consolation should expand to include rhythmic behaviors (e.g., rocking).  Your need for a sense of competence also emerges in things you try to do for yourself, perhaps before you are ready to do them, as when insisting on putting food in your mouth and refusing your caregiver's help.

20 C.F.R. 416.926a(k)(2)(i).  The descriptor for older infants and toddlers reads:

> As you grow, you should be trying to do more things for yourself that increase your sense of independence and competence in your environment.  You might console yourself by carrying a favorite blanket with you everywhere.  You should be learning to cooperate with your caregivers when they take care of your physical needs, but you should also want to show what you can do; e.g., pointing to the bathroom, pulling off your coat.  You should be experimenting with your

independence by showing some degree of contrariness (e.g., "No! No!") and identity (e.g., hoarding your toys).

20 C.F.R. § 416.926a(k)(2)(ii).  Claimant contends that, when evaluating the medical evidence of record, the ALJ failed to consider the "general statement" appearing in 20 C.F.R. § 926.416a(k)(1)(iv) above the age group descriptors:

> Caring for yourself means recognizing when you are ill, following recommended treatment, taking medication as prescribed, following safety rules, responding to your circumstances in safe and appropriate ways, making decisions that do not endanger yourself, and knowing when to ask for help from others.

*Id.*   Claimant further argues that the ALJ erroneously did not elicit testimony regarding his participation in his medical treatment or recognition of an oncoming asthma exacerbation.

This provision of the regulations does not explicitly state that a claimant's age should be taken into consideration; however, to view it otherwise, in the context of 20 C.F.R. § 416.926a as a whole, defies regulatory and common sense. *See, e.g.,* 20 C.F.R. § 416.926a(b) (Based on the record, "[w]e will look at how appropriately, effectively, and independently you perform your activities compared to the performance *of other children your age who do not have impairments.*") *Id.* (emphasis supplied).  The court finds that the ALJ properly evaluated the evidence relating to the "caring for yourself domain," and her conclusion that claimant had no

limitations in this domain is supported by substantial evidence.

Finally, claimant contends that the ALJ's determination that claimant had less than marked limitation in the domain of health and physical well-being is not supported by substantial evidence.  The ALJ found, after reviewing exhaustively the medical evidence contained in the record, that

> [a]s discussed previously, the claimant has a history of treatment for asthma including two overnight hospital visits for symptoms.  However, there is no indication that the claimant has been hospitalized since March of 2018.  As discussed previously, the record indicates that his asthma symptoms have largely responded to treatment with medication.  In more recent treatment records from August of 2018, his asthma was noted to produce no limitations in activities of daily living.  His asthma symptoms were described as being mild to moderate with the most recent treatment records from March of 2019 describing his symptoms as being only mild and uncomplicated.  As discussed above, his mother reported that the claimant has been given no restriction of activity.  Dr. Heilpern opined that the claimant has no limitation in health and physical well-being but the claimant's persistent history of asthma supports a finding that he has some limitations in this domain.  However, the objective medical findings including the notation of mild to moderate symptoms does not support a finding of greater than less than marked limitations in this domain.

Tr. 32.  Claimant would have the court engage in *de novo* review of the evidence, rather than determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied, as Eleventh Circuit precedent requires.  Based on the applicable scope of review, the ALJ's findings were supported by substantial evidence.

14

C.    **Conclusion and Order**

In summary, the court concludes that the ALJ's decision regarding claimant's disability was supported by substantial evidence and in accordance with applicable legal standards.  Accordingly, the decision of the Commissioner is AFFIRMED.

Costs are taxed to claimant.  The Clerk is directed to close this file.

**DONE** and **ORDERED** this 19th day of August, 2021.

_____
Senior United States District Judge

15